Bernadette BALTZER, Tricia M. Markham, and Julie Rortvedt, Plaintiffs,

v.

CITY OF SUN PRAIRIE/POLICE DEPARTMENT, Chief of Police Raymond Boehlert, Lieutenant Carlyle Wilkinson, Sergeant Kenneth Hammond, and Sergeant Patrick O'Connor, Defendants.

No. 88–C–693–C.

United States District Court,
W.D. Wisconsin.

July 21, 1989.

Order on "Light Duty" and Maternity Leave Issues July 26, 1989.

Lester Pines, Ruth Robarts, Cullen, Weston, Pines & Bach, Madison, Wis., for plaintiffs.

John R. Sweeney, Melli, Walker, Pease & Ruhly, S.C., Madison, Wis., for defendants.

## ORDER

CRABB, Chief Judge.

In this civil action brought pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 plaintiffs, female police officers employed by the town of Sun Prairie, contend that defendants discriminated against them in employment on the basis of gender. Now before the court are defendants' motion to dismiss, motion for summary judgment, motion *in limine*, and motion to strike portions of the plaintiffs' affidavits, exhibits, and proposed findings of fact.

Because defendants fail to demonstrate that dismissal of the case is warranted, I will deny all of their motions to dismiss except their motion to dismiss plaintiffs' Title VII claims against the City of Sun Prairie and their motion to dismiss claims concerning "ride-alongs" and calls for backup brought against the city under § 1983. Because I find that plaintiffs have failed to establish a *prima facie* case of discrimination as to all but one of their claims, summary judgment will be granted in favor of defendants on all of plaintiffs' claims except that relating to plaintiffs' shift change.

From the parties' proposed findings of fact and supporting affidavits and exhibits, and for the purpose only of deciding these motions, I find that there is no genuine dispute as to the following material facts.[1]

## FINDINGS OF FACT

Plaintiffs are female police officers with the City of Sun Prairie Police Department. They are each classified as Police Officer–II.

The department includes twenty-four full-time sworn officers and approximately twenty-five nonsworn, civilian employees. All department employees are employed by the defendant City of Sun Prairie. Plaintiffs are the only full-time female officers employed by the city.

Defendant Boehlert is chief of the department. He is responsible for all officers

---

1. Defendants have moved to strike portions of plaintiffs' affidavits, exhibits, and proposed findings of fact on the grounds that they lack foundation, are hearsay, or are otherwise inadmissible. When the challenged evidence is relied upon by the parties to support or refute a proposed finding of fact or when a proposed finding of fact is challenged, I have taken note of plaintiffs' objections and have considered only evidence that is admissible, as provided by this court's summary judgment procedures and Rule 56 of the Federal Rules of Civil Procedure, and I find as fact only those proposals that are relevant and sufficiently supported by admissible evidence.

I note, further, that both defendants and plaintiffs failed to comply faithfully with this court's requirements for proposed findings of facts. Both proposed as fact mere allegations.

Both failed to include in their proposed findings of fact factual statements contained in the affidavits and depositions that are material to a resolution of the motions before the court. The court is not obliged to examine the hundreds of pages of affidavits and depositions the parties have submitted in order to glean all the material facts in the record. However, where material evidence contained in the affidavits and not included by the parties in their proposed findings of fact came to my attention in the course of deciding this motion, I have included that evidence in my findings of fact.

Finally, because I find that plaintiffs' claim concerning discriminatory light duty restrictions is beyond the scope of their administrative charges and thus cannot be raised in this action, I will not engage in any factfinding concerning that claim.

and civilian members of the department. He reports to the Mayor of Sun Prairie, the City Council, and the Police and Fire Commission. He does not have authority to hire, promote, or terminate a member of the department. Only the Police and Fire Commission, a citizen board, has the power to hire, promote, or terminate employees. However, defendant Boehlert may recommend to the commission that it take such action.

Defendant Wilkinson is one of two lieutenants in the department. He reports directly to defendant Boehlert.

Defendants Hammond and O'Connor report directly to defendant Wilkinson.

Defendant Hammond has general day-to-day authority for supervision of one of three duty shifts. He supervised plaintiffs when they were assigned to his shift.[2] Hammond currently supervises the 7:00 a.m. to 3:00 p.m. shift.

Defendant O'Connor currently supervises the 3:00 p.m. to 11:00 p.m. shift. All three plaintiffs currently are assigned to that shift.

*Change of Plaintiff Rortvedt's Schedule*

In November 1987, defendant Wilkinson told plaintiff Rortvedt that he was concerned that the three full-time women officers were sometimes assigned to the same shift and day off schedule. When plaintiffs were all assigned to the same shift and work schedule, no female officer was on duty during other shifts or work schedules. Wilkinson changed Rortvedt's day off schedule. To balance the workforce, he also changed the day off schedule of Rick Lange, a male officer. After the schedule change there continued to be no woman available during other shifts.

Later in November, plaintiffs Rortvedt and Baltzer discussed with defendant Wilkinson their dissatisfaction about the change. Defendant Wilkinson told them that "there were nights when all females were working and all men were working and I don't like to see this." In a later discussion he stated that there are "certain calls which females could handle better than males and certain calls which males could handle better."

On November 30, 1987, defendant Boehlert told plaintiff Baltzer that he was not aware of "the situation." After looking at his calendar, he said that he "could see" what defendant Wilkinson was "trying to do." He stated that he would not take a position on the matter because he had delegated scheduling responsibility to Wilkinson. Defendant Boehlert has final responsibility for scheduling.

In December 1987, plaintiff Rortvedt filed a grievance concerning the change in her work schedule. On February 2, 1987, defendant Boehlert rescinded the schedule change. Rortvedt lost no back pay or related benefits because of the temporary schedule change. The change prevented her from "working out."

*Denial of Training to Plaintiffs*

Officers receive basic training and education in law enforcement before beginning employment with the department, and continue their training and education during their employment. The department sometimes orders officers to attend training or education courses. For example, officers must remain current in firearms and driver training.

Officers are generally encouraged to obtain additional education and training in law enforcement. Most training is left to officer initiative. However, from time to time department supervisors will request that individual officers participate in a specific training program.

When required training is available, supervisory personnel advise officers that they are to sign up for and receive the training. Other training is optional. Officers are permitted to attend such training as the needs of the department require, taking into consideration individual officers' preferences and department resources.

**2.** Defendants propose as fact that defendant Hammond "has not supervised plaintiff Markham for any extended period of time." In her affidavit, plaintiff Markham avers that defendant Hammond supervised her for "at least nine months in 1981, 1982, and 1985." What constitutes an "extended period of time" and exactly how long Hammond supervised Markham are not material to a resolution of defendants' motions.

Periodicals detailing training opportunities provided by outside organizations are generally available in a sergeant's office.[3] The department does not formally notify officers of the availability of periodicals or search out particular training opportunities for officers.

If an officer wishes to attend a course or training session, she may submit a request to her supervisor, who will forward the request to a lieutenant for approval. Plaintiffs have requested additional training. Some of their requests have been approved and some have been denied.

Since 1980, plaintiff Rortvedt has received between 989 and 1081 hours of training, ranking her third in the department. Plaintiff Baltzer received between 889 and 965 hours of training, ranking her sixth in the department. Plaintiff Markham received between 789 and 820 hours of training, ranking her ninth in the department.[4]

Plaintiff Markham has received only that training that was mandatory for officers during the years she has been with the department. Plaintiff Rortvedt and Baltzer completed additional training; much of the additional training was done at plaintiffs' expense.

Only male officers have received special training in suburban drug investigation and arson investigation.

*Denial of Special Assignments to Plaintiffs*

Defendant Wilkinson is responsible for scheduling and making special assignments for officers. Defendant Boehlert is responsible for final approval of all assignments.

Certain officers and supervisory officials are given additional assignments. Special training has been given to officers who receive special assignments. There is no formal application process for special assignments.

All officers chosen for additional assignments have been male. In determining the department's needs for additional assignments, the department has not investigated plaintiffs' interests, skills, or experience. The department has not announced to plaintiffs the availability of special assignments.

The department has an on-going major accident investigation team. All members of the team are male. In addition, the department has trained two male officers in arson investigations and has assigned them to arson investigations. Also, the department has assigned three male officers to participate in a drug investigation unit.[5] No woman has been given any special assignment.

Plaintiff Markham has received no special assignments and no additional training for any special assignment.

From 1980 to 1982, on her own initiative, plaintiff Baltzer received training in sexual assault and child victim cases. The training was not related to any specific assignment.

**3.** Plaintiffs aver that training materials were "locked up" in offices. Defendants admit that the materials were in locked offices when no sergeant was on duty. However, they aver that whenever a segerant was on duty, the offices containing the materials were unlocked. Defendants also aver that daily roll call was often held in an office in which training materials were stored and that they observed plaintiffs reading the materials. Because plaintiffs do not aver that the materials were always locked, I accept as fact defendants' proposed fact that the materials were available except when no sergeant was on duty.

It is disputed whether materials were available in the squad room. This dispute cannot be resolved on a motion for summary judgment. However, because I have already found that training materials were generally available, whether they were also available in the squad room is immaterial.

**4.** Although the parties differ over the number of hours of training plaintiffs received, the exact number is immaterial to the resolution of defendants' motions.

**5.** Defendants propose as fact that the department maintains only one on-going team. Plaintiffs contest this proposed finding of fact by describing the department's "arson group" and "drug investigation unit." Defendants do not dispute that these groups or units exist or that an assignment to such a group or unit constitutes a special assignment. Whether such a group or unit is on-going or is denominated a "team" is not material to the resolution of defendants' motions.

On her own initiative, plaintiff Rortvedt received training to become a field training officer. She was not given an assignment as a field training officer until after the filing of this lawsuit.

## Denial of Promotions to Plaintiffs

Officers who wish to apply for a promotion to Police Officer–III, sergeant, lieutenant, detective, youth officer and other positions within the department must take a written examination administered by the State of Wisconsin and an oral examination administered by the Police and Fire Commission. The written test concerns basic skills and knowledge. Applicants prepare for the exams by studying materials found in most libraries. The oral exam contains general, not technical, questions. Following the examinations the commission certifies candidates who achieve passing marks, ranks the certified candidates, and sends a ranked list of certified candidates to defendant Boehlert. Defendant Boehlert, with occasional assistance from defendant Hammond, selects one candidate. The commission may accept or reject the selection.

An officer's prior training and special assignments do not affect her chances of being certified by the commission.[6]

Plaintiff Baltzer generally competes for every promotion. In spring 1987, Baltzer took the written and oral examinations for the Police Officer–III position.

Plaintiff Rortvedt has also applied for a promotion.

Neither plaintiff Baltzer nor plaintiff Rortvedt has ever been certified by the commission.

Plaintiff Markham has not applied for a promotion.

## Calling Backup for Plaintiff Rortvedt

In April 1988, plaintiff Rortvedt and one other female officer and two male officers were on the scene where someone was threatening suicide. The male subject had refused to leave voluntarily and had vowed to resist the officers. Defendant O'Connor was the highest ranking officer at the scene. He called for backup. A male officer, Officer Dennhardt, responded to the call.[7]

Plaintiff Rortvedt did not discuss the incident with defendant O'Connor. She did discuss it with other officers. Officer Burton and plaintiff Rortvedt filed departmental reports concerning the incident.[8]

---

**6.** Plaintiff Rortvedt avers that the job description for the Police Officer–III position to which she applied states that "special training in modern police methods and practices" was part of the "desirable training and practice." She believes that lack of special training lessens her chance of promotion and proposes as fact that defendants "emphasize special training in their backgrounds as part of their qualifications for their current positions." Plaintiffs also propose as fact that special assignments "provide experience which officers can use in discussing their qualifications and in answering questions posed during the oral promotion examinations." Plaintiffs do not provide any examples of how special assignments might aid them in responding to questions.

These general and conclusory averments based largely on plaintiffs' unsubstantiated perceptions and speculations do not place in dispute defendants' proposed fact that training and assignments are not a factor in the certifying decision.

**7.** Plaintiff Rortvedt avers that defendant O'Connor requested additional "manpower." Defendant O'Connor avers that he does not recall using the term "manpower" and that if he did

use the term he did not intend any gender-specific meaning.

**8.** Both parties have proposed findings of fact concerning a second incident involving plaintiff Rortvedt in which additional assistance was requested. However, because it is undisputed that no defendant was at the scene or involved in the request and because there are no proposed facts suggesting that there was a policy of calling for male backup when a female officer was at the scene, the proposed factual findings are not relevant.

In addition, plaintiffs suggest in their brief that during the first incident Rortvedt called plaintiff Markham to assist prior to O'Connor's arrival at the scene and that O'Connor discriminated against Markham by requesting additional backup despite her presence. However, plaintiffs have not proposed as fact that Markham was present and I decline to search the record for evidence to validate the factual assertions made in the briefs. In any event, considering the ultimate disposition of plaintiff Rortvedt's backup claim, plaintiffs' failure to propose facts in support of Markham's claim is irrelevant.

*Plaintiff Rortvedt's Request for a Ride–Along*

On two occasions in 1987 plaintiff Rortvedt asked defendant Hammond to permit her to have a civilian "ride-along" with her.

Prior to 1989, department policy required written permission for a ride-along from defendant Boehlert and the shift sergeant. In 1989, the department adopted a policy requiring written approval only from the shift sergeant. Department policy also required the officer requesting a civilian ride-along to inform the supervising officer of the identity of the civilian.

On January 21, 1987, plaintiff Rortvedt did not immediately identify the ride-along. On April 7, 1987, plaintiff Rortvedt did not identify the ride-along in her written request. On both occasions, defendant Hammond delayed permission for a ride-along. Once Hammond stated that permission was delayed because plaintiff Rortvedt had not treated him to coffee or "talked nice" to him. On a second occasion, defendant Hammond stated that it would be easier to get permission if plaintiff Rortvedt would "treat the sergeant better" and "come in and buy him some coffee." Defendant never denied plaintiff Rortvedt's requests for a ride-along.

*Discrimination Charges*

On February 10, 1988, plaintiffs filed discrimination complaints with the Equal Rights Division of the State of Wisconsin Department of Industry, Labor, and Human Relations, and with the Equal Employment Opportunities Commission. On April 11, 1988, plaintiffs filed amended complaints with the same agencies.

The complaints and amended complaints plaintiffs submitted to the Equal Rights Division included the following claims: defendants changed the shifts of female officers, defendants engaged in sexual harassment that substantially interfered with plaintiffs' work performance by creating a hostile environment, defendants discriminated against them in the terms and conditions of their employment, defendants cre-

ated special teams composed entirely of men and gave these officers special training, defendants actions deprived them of opportunities for advancement, defendants requested male officers to assist when plaintiff Rortvedt was on duty, and defendants refused plaintiff Rortvedt permission to have a civilian "ride-along" with her.[9]

On June 23, 1988, following its investigation, the Equal Rights Division issued initial determination letters in which it found probable cause that defendants had engaged in discriminatory practices.

On September 8, 1988, plaintiffs received "right to sue" letters from the Equal Employment Opportunities Commission.

## DISPUTED FACTS

The parties dispute defendants' motives in changing plaintiff Rortvedt's schedule. Rortvedt avers that the change in her schedule was a result of defendants' discriminatory intent. She states that the change did not affect the availability of female officers during the 3:00 to 11:00 shift because it replaced a schedule in which plaintiffs Baltzer and Rortvedt were generally on duty while plaintiff Markham was off-duty, with a schedule in which plaintiffs Rortvedt and Markham were generally on duty while plaintiff Baltzer was generally off-duty. Defendant Wilkinson avers that the change made women officers more available because after the change two women were on duty each day.

The parties dispute whether plaintiffs have been called in when off-duty or have been given special assignments based on their gender. Plaintiffs aver that they have never been called in from patrol duties or when off-duty to handle, search, or transport female suspects or victims. Plaintiffs Rortvedt and Markham aver that they have never been specially assigned or called in to work with sexual assault or child victim cases unless, as in the case with male officers as well, the victim asks for the officer by name. From 1980 to

---

**9.** Plaintiffs' complaints and amended complaints submitted to the Equal Rights Division also contain claims that are not related to those raised in this suit. They will not be discussed here.

1982, plaintiff Baltzer received special training in sexual assault and child victim cases. Baltzer avers that since early 1985 she has not been assigned to such cases because in 1985, her supervisor told her that handling such investigations was taking too much time away from her patrol duties.[10]

Defendant Hammond avers that on January 25, 1987, plaintiff Rortvedt was called in from patrol duty to examine a female victim. On August 19, 1987, plaintiff Rortvedt was called in from off-duty to transport an arrested woman. He also avers that on July 8, 1986 and July 12, 1986, plaintiff Baltzer assisted during off-duty hours in a sexual assault investigation.

Defendant Boehlert avers that plaintiff Baltzer was assigned to three sexual assault investigations in 1985, three sexual assault investigations in 1986, and one sexual assault investigation in 1986.

The parties dispute the circumstances surrounding plaintiff Markham's failure to apply for a promotion. Defendants aver that they encouraged her to apply for a promotion and that she demured because she believed she should not take on extra responsibilities while her children were young. Plaintiff Markham avers that no defendant encouraged her to apply. She proposes as fact that she did not apply because "she has come to believe that she would not be promoted, regardless of her performance on the written or oral examinations, because Sgt. Hammond influences the promotion process by making recommendations to the Chief of Police and because he has taken a very negative view of her competence as an officer." Plaintiff points to events that defendants do not dispute occurred as examples of his negative view of her. These are that defendant Hammond recommended that she be fired based on a single, isolated incident and that he told her other supervisors to "watch her."

---

**10.** Plaintiff Baltzer proposes as fact that defendant Boehlert decided to stop assigning her to special investigations and told plaintiff's supervisor to change her assignments. Her affidavit does not support this proposed fact. She avers that defendant Boehlert had her supervisor tell

## OPINION

Defendants have raised several arguments in support of their motion to dismiss and their motion for summary judgment. They contend that plaintiff's claims under Title VII should be dismissed for failure to plead conditions precedent; that plaintiffs' Title VII claims concerning training, promotion, procedural inconveniences, and light-duty restrictions should be dismissed because they were not alleged in their administrative complaints; and that their Title VII claims against all of the defendants except the City of Sun Prairie should be dismissed for failure to name them in the complaint. They also contend that plaintiffs' § 1983 claims against the City of Sun Prairie should be dismissed for failure to allege an official policy or practice of discrimination. Finally, defendants argue that they are entitled to summary judgment in their favor on all of plaintiffs' claims because there exists no genuine issue of material fact concerning defendants' liability. I will discuss these contentions in turn.

### 1. Failure to Plead Conditions Precedent

██ Filing a charge with the Equal Employment Opportunities Commission and any appropriate state authorities is a condition precedent to bringing a Title VII claim against a local government in federal court. 42 U.S.C. § 2000e–5(b), (c). Fulfillment of conditions precedent should be "averr[ed] generally" in the complaint. Federal Rules of Civil Procedure 9(c).

Plaintiffs do not allege in their complaint that they have fulfilled this condition precedent. However, it is not disputed that plaintiffs have filed administrative charges. Plaintiffs' counsel has submitted an affidavit averring that charges were filed with the EEOC and the Wisconsin Equal Rights

her that her assignment was changed. There is no indication that plaintiff Baltzer had personal knowledge of Boehlert's decisions and her description of his statements to her supervisor is hearsay. Accordingly, I cannot find as fact that Boehlert ordered the change in assignments.

Division and copies of the charges have been submitted to the court. Defendants admit that they were aware of the filing of the charges prior to the commencement of this lawsuit. They do not claim to have been prejudiced by plaintiffs' failure to plead fulfillment of the condition precedent. Nevertheless, defendants contend that plaintiffs' failure to meet the pleading requirement mandates dismissal of their Title VII claims.

 Because Title VII is a remedial statute, procedural technicalities should not be used to bar Title VII claims. *Zipes v. TransWorld Airlines*, 455 U.S. 385, 397–98, 102 S.Ct. 1127, 1134–35, 71 L.Ed.2d 234 (1982); *Babrocky v. Jewel Food Company*, 773 F.2d 857, 863 (7th Cir.1985); *Gooding v. Warner–Lambert Co.*, 744 F.2d 354 (3d Cir.1984); *Equal Employment Opportunities Commission v. Wah Chang Albany Co.*, 499 F.2d 187 (9th Cir.1974). The Title VII requirement that persons who believe they are victims of discrimination file an administrative charge prior to bringing suit in federal court is designed to permit administrative agencies to investigate and settle disputes before the instigation of a lawsuit. *Babrocky*, 773 F.2d at 863–64. A plaintiff's failure to file a charge with the appropriate administrative agencies does not affect the jurisdiction of the federal court. *Zipes*, 455 U.S. at 385, 102 S.Ct. at 1127; *Tillman v. City of Milwaukee*, 715 F.2d 354, 360 (7th Cir.1983).

Where, as here, it is undisputed that the condition precedent has been fulfilled, the court's jurisdiction is not in question, and defendants have not been prejudiced by plaintiffs' failure to plead fulfillment of the condition precedent, dismissal is not warranted. *See Grimes v. Louisville & Nashville Railroad Co.*, 583 F.Supp. 642, 648 (S.D.Ind.1984) (dicta), *aff'd without opinion* 767 F.2d 925 (7th Cir.1985). Thus, although it would have been better practice for plaintiffs to have amended their complaint to plead fulfillment of the condition precedent and thus avoid the necessity for briefing and decision of this issue, *see, e.g., Gooding*, 744 F.2d at 359 (leave to amend complaint to allege fulfillment of conditions precedent should be freely given), I will deny defendants' motion to dismiss plaintiffs' Title VII claims for failure to plead fulfillment of conditions precedent.

### 2. Scope of Administrative Charge

 Only those claims that plaintiffs have raised in an administrative charge or which are reasonably related to those claims may be raised before the district court. *Babrocky*, 773 F.2d at 863; 2 A. Larson & L. Larson, *Employment Discrimination* § 49.11(c)(1) (1988). Like the requirement that plaintiffs allege fulfillment of conditions precedent, the rule limiting the scope of the complaint to those claims raised before the appropriate administrative agency is intended to permit the agency

> "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983). Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumvent the [agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge....

> [A]n inquiry into the scope of the charge always entails an inquiry beyond the face of the complaint into the legal characterizations that surround the barebones of the factual allegations contained in the charge. In addition, such an inquiry may require evidence of the breadth of the [administrative] investigation....

*Babrocky*, 773 F.2d at 863. In determining whether a claim in the complaint is related to the claims raised in the administrative charge, the charge should be construed liberally. *Id.* at 864.

Plaintiffs' amended complaint alleges that defendants engaged in the following discriminatory acts: 1) defendants Boehlert and Wilkinson changed plaintiff Rortvedt's shift; 2) defendants Boehlert, Wilkinson, Hammond, and O'Connor informed officers of training and special assignments

through informal methods that bypassed the women in the department thus denying training and assignments to plaintiffs; 3) defendants' discriminatory actions with regard to training and special assignments hampered plaintiffs' chances of promotion; 4) defendant O'Connor called for backup while plaintiff Rortvedt was on duty; [11] 5) defendant Hammond harassed plaintiff Rortvedt when she requested permission for a ride-along and delayed granting permission; and 6) defendants Boehlert, Wilkinson and Hammond imposed restrictions upon plaintiffs Baltzer and Markham when they were on light duty status and leaves of absence.[12]

Most of the claims of the complaint were included in plaintiffs' charge or amended charge filed with the Wisconsin Division of Equal Rights. In particular, the claims concerning plaintiff Rortvedt's shift change, plaintiff Rortvedt's ride-along request, and the calling of backup when Rortvedt was on duty are all clearly raised in Rortvedt's charge.[13] Plaintiffs' promotion claim was also raised explicitly in their administrative charges.

■ The claims concerning special assignments and training are also raised or related to claims raised in plaintiffs' charge or amended charge. Plaintiffs' assignment claim, as articulated in their complaint, briefs, and proposed findings of fact, is that defendants had no formal method of informing officers of special assignments and of distributing those assignments, and that their informal method excluded female officers. Plaintiffs allege in their administrative charges that all special team members were male and that defendants dis-

criminated against plaintiffs in making special assignments. The charge does not allege specifically that defendants used discriminatory informal practices in informing officers of assignments and distributing them. However, because discrimination in assignments almost necessarily presupposes a discriminatory mechanism for informing officers of assignments and distributing them, these claims should be considered "related to" plaintiffs' assignment claim. *See Babrocky*, 773 F.2d at 864–65 (because claim of sex-segregated job categories presupposes discriminatory hiring and recruitment practices, those claims are related to job category claim); *cf. Proffit v. Keycom Electronic Publishing*, 625 F.Supp. 400, 408 (N.D.Ill.1985) (claim plaintiff not sent to a trade show not related to charge of discriminatory promotion policies where not alleged that attendence at show could affect promotion).

Plaintiffs' training claim is also related to the claims of the administrative charges. The claim has two aspects: that defendants used informal procedures to inform officers of general training opportunities and to make training assignments that bypassed the women officers and deprived them of training opportunities, and second, that plaintiffs did not receive special training that was given to those given special assignments because they were never given such assignments. The amended charges clearly include the second aspect of the training claim. All three plaintiffs claimed in their amended charges that defendants had made special assignments to various "teams" and that the officers given these special assignments received additional training. The first aspect of plaintiffs'

---

**11.** In their briefs plaintiffs also claim that plaintiff Markham was discriminated against when defendants called for backup when she was at the scene of an incident. Because neither party has proposed findings of fact concerning Markham's backup claim, I have not considered any backup claim that she might have.

**12.** Although the administrative charges and the amended complaint do not allege which defendant engaged in each alleged action or, in some cases, which plaintiff was the victim of the alleged discriminatory action, the findings of fact make clear which parties might be involved

in each incident and I have described the claims accordingly.

**13.** Each of the plaintiffs raised the issue of shift changes in their amended administrative charge and plaintiffs' amended complaint purports to raise all claims as to all three plaintiffs. However, it is undisputed that only plaintiff Rortvedt's shift was changed. I do not understand plaintiffs Baltzer and Markham to be raising their own claims of discriminatory shift changes. Even if they were, I see no basis for claims by Markham and Baltzer concerning the change of Rortvedt's shift.

training claim is "like or reasonably related to the allegations of the charge." *Babrocky*, 773 F.2d at 864. The distinction between training given to officers after receipt of a special assignment and training given to officers unrelated to special assignments is not so critical as to immunize the second from scrutiny. A consideration of training opportunities would likely encompass all training, and not merely training given pursuant to a special assignment. Even more important, the gravamen of this second aspect of the training claim is related to plaintiffs' assignment claim. The charges allege that defendants maintain an informal system of assignments that discriminates against female officers. This same informality is the alleged defect in the dissemination and assignment of training opportunities. Any consideration of defendants' informal practices would almost inevitably touch upon training as well as special assignments.

■ The final claim of plaintiffs' complaint is that defendants discriminated against plaintiffs Baltzer and Markham by imposing discriminatory restrictions while they were on light duty status during their pregnancies. Plaintiffs' administrative charges include no allegations concerning any restrictions imposed on plaintiffs while they were on light duty status. The charges do contain several general allegations of discrimination. The charges allege that defendants engaged in sexual harassment that substantially interfered with their work performance by creating a hostile environment and that defendants discriminated against them in the terms and conditions of their employment. These general claims were not sufficient to allow the Division of Equal Rights to investigate or conciliate plaintiffs' light duty claim or to put defendants on notice of the charges against them. As one district court has noted:

> to allow litigants to expand an EEOC charge to include virtually any type of discrimination simply by including the phrase "terms and conditions of employment" would frustrate Title VII's policy that plaintiffs should not have unrestrained ability to litigate allegations of

discrimination that are neither contained in the EEOC charge nor investigated by the EEOC.

*Pritchett v. General Motors Corp.*, 650 F.Supp. 758, 762 (D.Md.1986); *see also Clay v. Quartet Manufacturing Company*, 644 F.Supp. 56, 60 (N.D.Ill.1986) (claim of sexual harassment not related to charge of wage discrimination); *Mann v. Morton Thiokol, Inc.*, 41 F.E.P. Cases 174, 1986 WL 8602 (N.D.Ohio 1986) (claim of continual harassment not like or related to claim of one incident in which plaintiff discriminatorily required to see a doctor); *Jackson v. Ohio Bell Telephone Co.*, 555 F.Supp. 80, 83 (S.D.Ohio 1982) (claim of termination and "discriminatory action" not related to claims of seniority, work assignments and harassment). Because plaintiffs' claims of discriminatory light duty restrictions are beyond the scope of their administrative charges, they may not be raised here.

■ Defendants have requested that the court dismiss those claims that are beyond the scope of the charge. However, the Court of Appeals for the Seventh Circuit noted in *Babrocky* that "the requirement that the scope of the [administrative] charge limit the scope of the subsequent complaint is in the nature of a condition precedent with which litigants must comply rather than constituting a component of subject matter jurisdiction." 773 F.2d at 864. When plaintiffs raise claims beyond the scope of the administrative charge summary judgment is appropriate rather than dismissal. *Id.* Accordingly, partial summary judgment will be granted in favor of defendants on the claim that plaintiffs' allegations of light duty restrictions are beyond the scope of their administrative charges. Summary judgment will be denied as to defendants' other claims concerning the scope of the charges.

*3. Failure to Name Title VII Defendants*

In their amended complaint plaintiffs have chosen to separate their § 1983 and Title VII claims. The caption of the complaint names as defendants City of Sun Prairie/Police Department, Boehlert, Wilkinson, Hammond and O'Connor. Immedi-

ately below the caption is the heading "First Claim." Under this heading is the subheading "Parties" in which Blatzer, Rortvedt, and Markham are listed as plaintiffs and the City of Sun Prairie, the Police Department, Boehlert, Wilkinson, Hammond and O'Connor are listed as defendants. The next subsection, entitled "Jurisdiction," states that plaintiffs' action is brought under 42 U.S.C. § 1983. After a subsection listing the acts complained of, plaintiffs begin a new section, entitled "Second Claim." In this section plaintiffs invoke Title VII and re-allege the acts complained of in the section raising their § 1983 claims. The first subsection, entitled "Parties," again lists Baltzer, Rortvedt and Markham as plaintiffs. It lists as defendants "Defendants, City of Sun Prairie.... the City of Sun Prairie operated the Police Department of Sun Prairie." Although plaintiffs' use of the plural "defendants" suggests that they meant to name all of the defendants in this section, none of the individual defendants is named as a defendant to the Title VII claims.

Defendants argue that the Title VII claims against the individual defendants should be dismissed because the individual defendants were not named in the section of the complaint raising the Title VII claims.[14] Defendants also note, without elaborating on its relevancy, that the complaint contains no factual allegations that the police department or the individual defendants are employers or agents within the meaning of Title VII. Plaintiffs have devoted considerable energy responding to defendants' comment concerning the lack of factual allegations and its effect on defendants' liability as employers or agents, and have failed to consider the import of their failure to name the individual defendants in the section of the complaint raising Title VII claims.

14. Defendants have also moved to dismiss the Title VII claims against the Sun Prairie Police Department. However, plaintiffs have named the department in the Title VII section of the complaint, albeit obliquely. Furthermore, the existence of the department as a named defendant is irrelevant since the department is not an entity separable from the City of Sun Prairie and is not suable in its own name. *See, e.g.,*

■ The plaintiff is the master of her complaint. *Duckworth v. Franzen,* 780 F.2d 645, 650 (7th Cir.1986). Plaintiffs have chosen to separate their § 1983 and Title VII claims and to divide their complaint into two sections. The fact that all the defendants are named in the caption does not imply that all defendants must defend against every claim. It is a frequent occurence that one complaint will include many claims and that each claim is asserted against only a subset of the defendants named in the caption. Here plaintiffs have separated their claims into two sections and have included in each section a subsection entitled "Parties." That they have listed each plaintiff in both sections suggests that the allegations of each section are intended to stand alone, without reference to the other section or the caption. In this context, there is no reason to find that plaintiffs may bring Title VII claims against defendants who were not named in the Title VII section of the complaint.

■ If plaintiffs had focused on the issue at hand and had moved to amend their complaint to name the individual defendants in the Title VII section of their complaint, their motion may well have been granted. However, plaintiffs have not made such a motion or averred that the failure to name the individual defendants was a clerical error. Trial on plaintiffs' claims is scheduled for August 7, 1989, only a few weeks hence. Permitting plaintiffs to amend so soon before trial would prejudice defendants. Accordingly, I find no basis for denying defendants' motion and defendants' motion to dismiss the Title VII claims against defendants Boehlert, Wilkinson, Hammond and O'Connor will be granted.[15]

*Brown v. City of Miami Beach,* 684 F.Supp. 1081, 1084 (S.D.Fla.1988).

15. It is doubtful that the dismissal of the Title VII claims against the individual defendants will affect the remedies to which plaintiffs may be entitled. Under Title VII an employer is strictly liable for the acts of its agents. *Horn v. Duke Homes,* 755 F.2d 599 (7th Cir.1985); *Ponton v. Newport News School Board,* 632 F.Supp.

#### 4. Failure to Plead Policy or Custom in Support of § 1983 Claim Against City

Under 42 U.S.C. § 1983 a plaintiff may establish municipal liability for the deprivations of a constitutionally protected interest if the plaintiff can show the existence of a municipal policy or custom and a sufficient causal link between that policy or custom and the constitutional deprivation. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978); *Jones v. City of Chicago,* 787 F.2d 200, 203 (7th Cir.1986). A municipality may be liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts the municipality has officially sanctioned or ordered. *City of St. Louis v. Paraprotnik,* 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988); *Pembaur v. Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Archie v. City of Racine,* 847 F.2d 1211, 1214 (7th Cir.1988). Acts to which municipal liability may attach include those taken pursuant to formally approved written policies and those taken pursuant to customs established informally by permanent, well-settled practice. *Paraprotnik,* 108 S.Ct. at 926; *Oklahoma City v. Tuttle,* 471 U.S. 808, 819–20, 823, 105 S.Ct. 2427, 2434, 2436, 85 L.Ed.2d 791 (1985); *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Bohen,* 799 F.2d 1180, 1189 (7th Cir.1986); *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 870 (7th Cir.1983).

To create liability, the policies and customs pursuant to which a challenged action is taken must be adopted or established by persons responsible under state law for making policy in that area of the municipality's business. *Paraprotnik,* 108 S.Ct. at 924; *Pembaur,* 475 U.S. at 482–484 and n. 12, 106 S.Ct. at 1299–1301 and n. 12; *Tuttle,* 471 U.S. at 822–823, 105 S.Ct. at 2435–36. Policies triggering municipal liability may also be established by a single decision of one official if that official has the authority to make final policy in that area of the municipality's business. *Paraprotnik,* 108 S.Ct. at 926; *Pembaur,* 475 U.S. at 482–84 and n. 11, 106 S.Ct. at 1299–1301 and n. 11; *Bohen,* 799 F.2d at 1189; *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 283–84 (7th Cir.1986). Whether an official has final policymaking authority is a question of state law. *Paraprotnik,* 108 S.Ct. at 924; *Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300.

Defendants contend that plaintiffs' § 1983 claims against the City of Sun Prairie must be dismissed because plaintiffs do not allege in their complaint that the discriminatory acts alleged were caused by a municipal policy or custom and plaintiffs do not identify any custom or policy.[16] Dismissal of a complaint is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Thus, although it would have been far better had plaintiffs alleged specifically a municipal policy or custom, their failure to plead the precise terminology used in § 1983 litigation does not warrant dismissal in this instance because the existence of a municipal policy or custom as to most of their claims can be inferred from the facts alleged.

Defendants rely on several cases to support their contention that dismissal is mandated here. *See, e.g., Henry v. Farmer City State Bank,* 808 F.2d 1228, 1237 (7th Cir.1986); *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985); *Flores v. City of Chicago,* 682 F.Supp. 950 (N.D.Ill.1988). However, in these cases, what most concerned the court was not a lack of a general allegation of policy or custom, but rather

---

1056, 1068 (E.D.Va.1986). If liability is found, the employer could be required to provide any remedies that could be imposed on an individual defendant as well as other remedies, such as reinstatement or promotion, that employees could not provide. *See Bohen v. City of East Chicago, Indiana,* 799 F.2d 1180, 1184 (7th Cir. 1986); *Brown v. City of Miami Beach,* 684 F.Supp. at 1084.

**16.** Defendants have not moved for summary judgment on the ground that no municipal policy or custom exists and have not proposed facts that would support a finding that defendants' actions were not taken pursuant to a policy or custom.

the paucity of specific factual allegations suggesting the existence of a policy or custom. *See Henry*, 808 F.2d at 1237.

In this case, the factual allegations of the complaint are sufficiently specific to suggest that plaintiffs will be able to prove facts establishing the existence of a municipal policy or custom as to their shift change, training, assignment, and promotion claims. The discriminatory acts alleged were made by the police chief and other supervisory personnel. It is undisputed that the police chief has general authority to supervise police officers and that the other defendants had been delegated some supervisory powers. Changing plaintiff Rortvedt's shift and denying plaintiffs opportunities for training, special assignments and promotion are not isolated incidents. Because plaintiffs have alleged specific facts which suggest that a custom or policy may exist, defendants' motion to dismiss these § 1983 claims against the City of Sun Prairie will be denied.

However, plaintiffs' "ride-along" and "backup" claims concern isolated incidents. The facts alleged in the complaint do not suggest that that these acts were taken by officers with final authority in those areas or that they were taken pursuant to any policy. Nor are there any facts in the record that suggest the contrary. Accordingly, these § 1983 claims against the City of Sun Prairie will be dismissed for failure to allege any facts tending to suggest the existence of a policy or custom.

### 5. *Motion for Summary Judgment on Merits of Every Claim*

Defendants have moved for summary judgment on every claim raised under Title VII and under § 1983 contending that no material facts are disputed and that they are entitled to summary judgment as a matter of law.

### A. *Analysis of Discrimination Claims*

Title VII provides as follows:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's ... sex....

42 U.S.C. 2000e–2.

The equal protection clause of the Fourteenth Amendment also forbids discrimination in employment on the basis of sex. Claims that state actors have engaged in discriminatory acts in contravention of the equal protection clause are actionable under 42 U.S.C. § 1983. B. Schlei & P. Grossman, Employment Discrimination Law at 678 (1983). Because pleading and proof requirements in Title VII claims are essentially the same as those under § 1983, I will consider defendants' motion to dismiss the two types of claims under the same analysis.[17]

Title VII and the equal protection clause prohibit employment discrimination on the basis of sex. They do not prohibit discrimination on the basis of personal favoritism, grudges, or other arguably unfair or improper motives. *See Benzies v. Illinois Department of Mental Health*, 810 F.2d 146, 148 (7th Cir.), *cert. denied*, 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987). Plaintiffs may prove sex discrimi-

---

**17.** Several relevant exceptions exist. First, under § 1983 plaintiffs must prove a municipal policy or custom. However, defendants have not raised the lack of a municipal policy or custom as a basis for summary judgment in their favor. Second, under § 1983 plaintiffs must prove that defendants personally participated in the alleged discriminatory actions. However, defendants have not raised lack of personal participation as a ground for summary judgment on any of plaintiffs' claims. Third, claims of disparate impact may not be brought under § 1983 where there is no proof of discriminatory intent. *Riordan v. Kempiners*, 831 F.2d 690, 695–96 (7th Cir.1987). However, as I discuss later, I do not find plaintiffs to be raising a disparate impact claim.

nation under either a disparate treatment or a disparate impact analysis. "In general, either theory may be applicable to a particular set of facts." *Regner v. City of Chicago,* 789 F.2d 534, 537 (7th Cir.1986) (citing *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977)).

Plaintiffs may raise a claim of disparate impact which challenges "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* To establish a *prima facie* case of disparate impact a plaintiff need " 'only show that the facially neutral standards in question [result] ... in a significantly discriminatory pattern.' " *Beard v. Whitley County REMC,* 840 F.2d 405, 409 (7th Cir.1988) (quoting *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977)). The burden of production then shifts to defendant to rebut plaintiff's evidence or to show that the alleged discrimination results from a business necessity. *Wards Cove Packing Company, Inc. v. Antonio,* — U.S. —, —, 109 S.Ct. 2115, 2126, 104 L.Ed.2d 733 (1989); *Regner,* 789 F.2d at 537. If defendants meet this burden of production, plaintiffs may attempt to show that the nondiscriminatory reasons put forward are pretextual. *Wards Cove,* — U.S. at —, 109 S.Ct. at 2126.

Plaintiffs may raise a claim of disparate treatment to challenge intentional discriminatory acts. The basic allocation of burdens and order of proof in disparate treatment cases is set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981):

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." [*McDonnell Douglas,* 411 U.S.] at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.,* at 802, 93 S.Ct. at 1825.

The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff ... The *McDonnell Douglas* division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question.

*Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94 (footnote and citations omitted).

▪ The proof a plaintiff must put forward to establish a *prima facie* case varies according to the factual context of her claims. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978) (test is neither mechanistic nor rigid). The elements of proof are well established in the termination and promotion contexts. The exact elements necessary to establish a *prima facie* case of other claims are less defined. However, the court's goal in defining the precise elements is "merely" to create "a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949–50. Thus, in general, a plaintiff must show that she is a member of a protected group, that she is doing an adequate job, that she has been treated differently despite her performance, and that others have received the benefits she seeks. *See, e.g., Riordan v. Kempiners,* 831 F.2d 690, 696 (7th Cir.1987); *Yarbrough v. Tower Oldsmobile Inc.,* 789 F.2d 508, 511 (7th Cir.1986); *Box v. A & P Tea Co.,* 772 F.2d

1372, 1376–77 (7th Cir.1985); *Babrocky v. Jewel Foods Co.,* 645 F.Supp. 1396, 1419 (N.D.Ind.1986).

 The establishment of a *prima facie* case

> raises an inference of discrimination ... because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.... And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting.

*Furnco,* 438 U.S. at 577, 98 S.Ct. at 2949–50. A plaintiff may prove her case using either direct or indirect evidence of discrimination. Because "[d]efendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it, and because most employment decisions involve an element of discretion," most plaintiffs must rely on indirect and circumstantial evidence. *Riordan,* 831 F.2d at 697.

With one exception, plaintiffs have not made it clear whether they consider their claims to be disparate impact or disparate treatment claims (they do explicitly denominate their shift change claim as one of disparate treatment). However, it appears that they wish their claims to be considered under the disparate treatment analysis which requires proof of discriminatory intent because they maintain in their brief that "intentional discrimination pervades" all their claims and because the cases they cite are almost exclusively disparate treatment cases. Furthermore, defendants consider plaintiffs to be raising disparate treatment claims. Accordingly, I will consider plaintiffs' claims under the disparate treatment model and will only touch upon the possible applications of a disparate impact analysis.

### B. Standards on Summary Judgment

 In deciding a motion for summary judgment, a judge's role "is not [her]self to weigh the evidence and deter-

mine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Because intent is generally the critical issue in a discrimination case and because intent is often proved indirectly via circumstantial evidence, summary judgment is rarely appropriate. *Friedel v. City of Madison,* 832 F.2d 965, 972 (7th Cir.1987); *Regner,* 789 F.2d at 536; *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir.1986); *Stumph v. Thomas & Skinner,* 770 F.2d 93, 97 (7th Cir.1985). Summary judgment is appropriate only where plaintiffs put forward no evidence tending to establish discriminatory intent or where defendants successfully establish a nondiscriminatory, non-pretextual reason for their actions. *Friedel,* 832 F.2d at 972; *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 899 (3d Cir.1987) (en banc), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *Powers,* 782 F.2d at 694; *Box,* 772 F.2d at 1378; *Stumph,* 770 F.2d at 98. Summary judgment is limited to these circumstances because the burden remains on the moving party to demonstrate that there exist no material factual disputes "regardless of which party would have the burden of persuasion at trial." *Chipollini,* 814 F.2d at 896. Since, however, the nonmoving plaintiff "will bear the burden of persuasion at trial," the defendant "may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." *Id.* (citing *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Based on this outline of the mode for analyzing motions for summary judgment in discrimination cases, I will examine whether summary judgment is appropriate as to each of plaintiffs' claims.

### C. Shift Change

 It is undisputed that defendants changed plaintiff Rortvedt's shift because of her gender. Defendant Wilkinson told plaintiff Rortvedt that he was concerned

that the three full-time women officers were sometimes assigned to the same shift and day-off schedule. To balance the workforce, he also changed the day-off schedule of Rick Lange, a male officer. Defendant Wilkinson also told plaintiffs Rortvedt and Baltzer that "there were nights when all females were working and all men were working and I don't like to see this." In a later discussion he stated that there are "certain calls which females could handle better than males and certain calls which males could handle better."

Defendants argue that their action was gender neutral because they changed the shift of a male officer as well as plaintiff Rortvedt. Defendants' argument is unpersuasive. Defendant Wilkinson explicitly stated that he did not believe the three female officers should work together and that there were some calls that men could handle better than women and vice versa. These statements are not gender neutral. Defendants' admission that gender was the reason for the action establishes a *prima facie* case of discrimination. At issue is whether, under the disparate treatment analysis formulated in *McDonnell Douglas*, defendants have successfully rebutted the inference of discrimination by showing a nondiscriminatory reason for the change.

Defendants attempt to rebut the inference of discrimination by arguing that consideration of gender was permissible in this context because the shift change was made to improve the efficiency of the department by maximizing the use of female officers and thus was nondiscriminatory. The only support for this argument is a citation to *Torres v. Wisconsin Department of Health and Social Services*, 859 F.2d 1523 (7th Cir.1988) (en banc), *cert. denied*, —— U.S. ——, 109 S.Ct. 1133, 103 L.Ed.2d 194, in which the Court of Appeals for the Seventh Circuit held that it was permissible for a women's maximum security prison to employ only women in the living units where the state could prove that sex was a bona fide occupational qualification (BFOQ). The BFOQ exception to Title VII is extremely narrow. *Dothard*, 433 U.S. at 321, 97 S.Ct. at 2720; *see* 42 U.S.C. § 2000e–2(e)(1). A defendant asserting a

BFOQ bears the burden of proving that a factual basis exists for a gender-based hiring decision. *Torres*, 859 F.2d at 1527–28; *Norwood v. Dale Maintenance System*, 590 F.Supp. 1410, 1415 (N.D.Ill.1984). Because defendants have not made any attempt to meet this burden in this case, I cannot find that there exists a BFOQ exception with regards to the work shift schedules of female police officers.

Defendants also argue that even if the court does not find that it was permissible for defendants to make "benign" gender distinctions, they are entitled to qualified immunity because at the time the shift change was made it was not clearly established that such gender distinctions were impermissible. Although I find defendants' argument unpersuasive, it is unnecessary to decide this question. Assuming the validity of defendants' contention, plaintiffs have put forward evidence that suggests that the "legitimate," "nondiscriminatory" reason defendants gave for the shift change is pretextual. Thus, even if it were permissible for defendants to change plaintiff Rortvedt's shift in order to maximize the availability of female officers and even if defendants would be entitled to qualified immunity for changing plaintiff's shift for this reason, because plaintiffs have submitted evidence tending to show that the stated reasons for changing Rortvedt's shift were not the actual reasons for the change, summary judgment would not be appropriate.

Defendants stated that they changed Rortvedt's shift to make women officers more available and because some tasks, such as frisking female suspects and working with female victims of sexual assault, could be better done by women, while other, unspecified, tasks, could be better done by men. If this were the reason for the change than one would expect that female officers would be assigned to these tasks both before and after the shift change and that the schedule change would ensure that there would be more hours each week that at least one female officer was on duty.

However, the parties dispute whether these expected outcomes actually occurred. Rortvedt avers that the change did not

affect the availability of female officers during the 3:00 to 11:00 shift because it replaced a schedule in which plaintiffs Baltzer and Rortvedt were generally on-duty while plaintiff Markham was off-duty, with a schedule in which plaintiffs Rortvedt and Markham were generally on-duty while plaintiff Baltzer was generally off-duty. Furthermore, plaintiffs aver that both before and after the shift change they were called in from patrol duties or when off-duty to handle, search, or transport female suspects or victims. Plaintiffs Rortvedt and Markham aver that they have never been specially assigned or called in to work with sexual assault or child victim cases unless, as in the case with male officers as well, the victim asked for the officer by name. Baltzer avers that since early 1985 she has not been assigned to sexual assault and child victim cases because in 1985, her supervisor told her that handling such investigations was taking too much time away from her patrol duties.

Defendants have submitted proposed findings of fact and affidavits disputing plaintiffs' version. Defendants aver that the change made women officers more available because after the change two women were on duty each day. They also aver that on January 25, 1987, plaintiff Rortvedt was called in from patrol duty to examine a female victim, that on August 19, 1987, she was called in from off-duty to transport an arrested woman, and that plaintiff Baltzer was assigned to three sexual assault investigations in 1985, three sexual assault investigations in 1986, and one sexual assault investigation in 1987.

On a motion for summary judgment, the movant has the burden of showing that no dispute of material fact exists. Defendants have not met their burden. Plaintiffs' averments suggest that defendants' stated reasons for the shift change were pretextual. Their fact-specific averments rise far above the level of a mere statement that plaintiffs believe that they were treated discriminatorily. *See Winters v. Prudential–Bache Securities, Inc.,* 608 F.Supp. 751, 756 (N.D.Ill.1984). Because plaintiffs have put forward probative evidence tending to show discriminatory intent, summary judgment is inappropriate.

## D. Special Assignments

 I have found as fact that there is no formal procedure for notifying officers of special assignments or for applying for such assignments, that that plaintiffs have not received assignments to "special teams," and that all members of these special teams are male officers. Plaintiffs contend that all assignments are made through an "old boy network" that excludes female officers. Defendants argue that they are entitled to summary judgment in their favor because plaintiffs have not established that they should have been given special assignments, that similarly situated male officers received assignments, and because plaintiffs have never applied for an assignment and there is no formal procedure for informing officers of assignments.

It is undisputed that certain officers are given additional assignments, that the availability of special assignments is not formally announced, that plaintiffs have not been made aware of the availability of such assignments, that there is no formal application process for these assignments, and that all officers chosen for additional assignments have been male.

Although plaintiffs' claim could be characterized as one of disparate impact as well as disparate treatment, most courts have considered similar claims under a disparate treatment analysis. *See Brady v. Thurston Motor Lines,* 726 F.2d 136, 146 (4th Cir.1984) (absence of written job descriptions and failure to post job openings analyzed as disparate treatment claim); *Equal Employment Opportunities Commission v. Kimbrough Inv. Co.,* 703 F.2d 98, 104 (5th Cir.1983) (Rubin, J., dissenting) (claims that plaintiffs have no access to information about promotion should be treated as a disparate treatment claim); *O'Brien v. Sky Chefs, Inc.,* 670 F.2d 864, 866 (9th Cir.1982) (claim of ill-defined criteria should be treated as a disparate treatment claim); *Key v. The Gillette Company,* 29 Emp.Prac.Dec. ¶ 32,909 (D.Mass.1982) (failure to post job

openings usually analyzed under disparate treatment not disparate impact model); *but see Robinson v. Montgomery Ward & Co., Inc.*, 823 F.2d 793 (4th Cir.1987) (failure to post vacancies can be important factor in proving a disparate impact claim). Because plaintiffs appear to consider their claim as one of disparate treatment only and because defendants also focus on the disparate treatment analysis, I will not consider whether a claim of disparate impact would be appropriate.[18]

Plaintiffs' claim is better analyzed as a disparate treatment claim because informal practices of publicizing assignments and making assignments do not necessarily affect one sex more than the other. The real gravamen of plaintiffs' complaint is not that the practices are informal but that the informal practices lead to a situation in which male supervisors and officers inform men of assignments and give them assignments without informing women of the opportunities or giving them assignments. Selectively informing officers of assignments and selectively assigning officers according to their gender is not a facially neutral practice to be challenged in a disparate impact claim.

Neither party has suggested what elements plaintiffs must prove to establish a *prima facie* case of disparate treatment in assignments. I conclude that the considerations in promotion cases are sufficiently similar to those in plaintiffs' assignment claim to make it appropriate to use for this case the *prima facie* elements courts have developed in promotion cases. Thus, the elements of a *prima facie* case are that plaintiffs are members of a protected group, that they were qualified for the assignment, that they applied for or would have applied for the special assignments, that they were not given the special assignments, and that the special assignments were given to someone else. *Cf. Box,* 772 F.2d at 1376–77; *Babrocky,* 645 F.Supp. at 1419.

■ It is undisputed that plaintiffs are members of a protected group. As to the second element, although plaintiffs have not submitted evidence showing that they were qualified for the special assignments, defendants have not argued that there were any particular qualifications required for the assignments or submitted any evidence that plaintiffs were unqualified. Where the movant for summary judgment does not argue that an element of a *prima facie* case has not been met, plaintiffs need not put forth evidence proving that it has been met to resist the motion.

Where assignments are not posted and officers are informed of available assignments by word of mouth, plaintiffs need not show that they applied for assignments. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1560 (11th Cir.), *cert. denied*, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *Babrocky*, 773 F.2d at 867; *Box,* 772 F.2d at 1376–77. Plaintiffs need show only that they would have applied had they been informed of the available assignments. *Box,* 772 F.2d at 1377. However, vague statements of interest in the position are not sufficient to prove that plaintiffs would have applied.

In *Box v. A & P Tea Co.*, 772 F.2d at 1377–78, the plaintiff claimed that she was discriminated against when the defendant failed to promote her to an assistant manager position. Because the defendant had no formal system of posting job openings and taking applications, the plaintiff was required to show only that "had she known of an opening for an assistant manager, she would have applied." *Id.* at 1377. Reviewing the evidence the plaintiff in that case put forward at summary judgment, the court of appeals stated:

> Only three statements in the entire record lend any support to Box's claim [that she would have applied]. First, Box wrote on her EEOC complaint that individuals with less seniority had been promoted to assistant manager. In her deposition, Box stated that she had asked her store manager for training "[t]o move up, in order to make more money, bookkeeper, assistant manager, whatev-

---

**18.** I also note that plaintiffs have not put forward any of the statistical evidence that would be necessary to support a disparate impact claim.

er." Third, Box stated in her affidavit that she had told her store manager that she "wanted to receive training for some other position so [she] could advance, for instance, into the assistant manager position."

*Box*, 772 F.2d at 1377.

In this case, plaintiffs' proposed findings of fact are devoid of *any* indication that plaintiffs would have applied for the special assignments had they known of them. Plaintiffs' counsel do not point to even one averment in plaintiffs' voluminous affidavits and deposition testimony in which plaintiffs state they had any interest in applying for the position. It may well be that plaintiffs' had an intense desire for special assignments and could have testified that they would have applied, or indeed did so testify at a deposition. However, because plaintiffs' counsel has failed to bring such testimony to the attention of the court pursuant to this court's procedures for summary judgment, defendants' motion for summary judgment on plaintiffs' special assignment claim will be granted.

## E. Training

Plaintiffs' training claims fall into two categories: (1) that plaintiffs were not informed of opportunities for, and were not given, general training, and (2) that because plaintiffs were denied special assignments, they were deprived of training that was given to officers who received special assignments.

Defendants are entitled to summary judgment in their favor on plaintiffs' second training claim. The claim is contingent on a holding that plaintiffs have made out a *prima facie* case in discrimination in assignments. If the assignments are not discriminatory, lack of training resulting from the failure to be given special assignments cannot be discriminatory. Because I have already found that plaintiffs' have not made out a *prima facie* case of discrimination in assignments, they cannot maintain the subsidiary claim that they were denied training as a result of the denial of special assignments.

■ Defendants are also entitled to summary judgment on plaintiffs' first training claim. Plaintiffs contend that the department has no formal procedure for informing officers of training opportunities or for allowing officers to apply for such opportunities. However, I have found as fact that although the department does not formally notify officers of the availability of training or search out particular training opportunities, periodicals detailing training opportunities provided by outside organizations generally are available in a sergeant's office. Defendants are not required to seek out officers and inform them of opportunities so long as knowledge of those opportunities is available equally to all officers regardless of gender.

Defendants have admitted that department supervisors will occasionally request that individual officers participate in a specific training program. However, plaintiffs have put forward no evidence suggesting that these requests were made on a discriminatory basis. Nor have plaintiffs put forward any evidence tending to suggest that their requests for training are ever denied for impermissible reasons. Plaintiffs have requested additional training. Some of their requests have been approved and some have been denied. The fact that only male officers have received special training in suburban drug investigation and arson investigation does not raise an inference of discriminatory motive because plaintiffs do not claim that they applied for such training and were rejected.

Because plaintiffs have not established a *prima facie* case of gender discrimination on their training claims, defendants' motion for summary judgment on these claims will be granted.

## F. Promotion

Plaintiffs' next claim is that defendants' discriminatory assignment and training practices lessened their chances of promotion. The promotion process consists of three steps: an oral and written test administered by the Police and Fire Commission resulting in a ranked list of passing candidates; a choice by defendant Boehlert

of the candidate he wishes to recommend to the commission; and a decision by the commission to accept or reject that recommendation. Plaintiff Rortvedt and Baltzer have applied for promotions. Neither has ever passed the first stage of the promotion process and been certified by the commission.

I have already found as fact that an officer's prior training and special assignments does not affect the first stage of the promotion process: being certified by the commission. Even if I had not found this as fact, the holdings that plaintiffs have not established a *prima facie* case of discriminatory assignment and training practices would preclude a claim that such discriminatory practices affected plaintiffs' opportunities for promotion.

■ Plaintiff Markham has never applied for a promotion. She alleges that defendants' discriminatory promotion process dissuaded her from applying. The parties dispute the circumstances surrounding plaintiff Markham's failure to apply. Plaintiff proposes as fact that she did not apply because "she has come to believe that she would not be promoted, regardless of her performance on the written or oral examinations, because Sgt. Hammond influences that promotion process by making recommendations to the Chief of Police, and because he has taken a very negative view of her competence as an officer." Examples of his negative view of her are that he recommended that she be fired based on a single, isolated incident and that he told her other supervisors to "watch her."

Accepting Markham's version as true for the purpose of this analysis, she has not put forward any evidence suggesting that she was discriminated against on the basis of gender. Title VII and the equal protection clause prohibit employment discrimination on the basis of sex. They do not prohibit discrimination on the basis of personal favoritism, grudges, or other arguably unfair or improper motives. *See Benzies*, 810 F.2d at 148. Nothing Markham has proposed as fact allows the court to infer that Hammond's negative view of her was related to her gender. In the absence

of any suggestion of sex discrimination, defendants' motion for summary judgment on this claim will be granted.

## G. Backup Calls

■ Plaintiff Rortvedt contends that defendant O'Connor discriminated against her on the basis of sex when he requested backup when Rortvedt was already present. It is undisputed that O'Connor did indeed request backup and that a male officer arrived at the scene. The parties dispute whether defendant specifically asked for additional "manpower" and whether that term indicates that defendant was requesting that a male officer assist him.

Plaintiff argues that O'Connor called for male backup based on impermissible gender stereotypes about the ability of women officers. However, the only evidence of discriminatory intent that plaintiff puts forward to establish her *prima facie* case of disparate treatment is that defendant used the term "manpower" when he requested backup. It may be regrettable that the English language often uses terms denoting the male gender to refer to both men and women. The use of terms such as chairman, fireman, or manpower ignores the reality that women serve as committee chairs, are employed by fire departments, and are active in the work force as well as in all other facets of modern society. However, it is not, without more, proof of discriminatory intent.

Plaintiff's mere assertion of her belief that defendant O'Connor discriminated against her on the basis of sex does not establish a *prima facie* case of discriminatory intent. *See Friedel*, 832 F.2d at 972 (assertions of belief do not raise dispute); *Winters*, 608 F.Supp. at 756 (mere statement of belief does not establish *prima facie* case). Accordingly, defendants' motion for summary judgment on this claim will be granted.

## H. Ride–Alongs

■ Plaintiff Rortvedt contends that defendant Hammond intentionally discriminated against her on January 21, 1987 and

April 7, 1987 when he delayed granting her permission for a civilian ride-along. On the first occasion Hammond stated that permission was delayed because plaintiff Rortvedt had not treated him to coffee or "talked nice" to him. On the second occasion, defendant Hammond stated that it would be easier to get permission if plaintiff would "treat the sergeant better" and "come in and buy him some coffee."

It may be that defendant Hammond's remarks are sufficient to establish an element of a *prima facie* case of discriminatory intent. When a male supervisor asks a female subordinate to "talk nice" and to get him coffee before he will give her permission to do something she is entitled to do, it is reasonable to infer that his comments are motivated by impermissible gender stereotypes. However, it is unnecessary to decide the question because even if a *prima facie* case exists, defendant has put forward a legitimate nondiscriminatory explanation for the delay in granting plaintiff permission for a ride-along.

I have found as fact that department policy required the officer requesting a civilian ride-along to inform the supervising officer of the identity of the civilian's identity. On both occasions complained of, plaintiff Rortvedt did not immediately identify the ride-along. Defendant could legitimately delay permission for a ride-along based on plaintiff's failure to comply with department policy. Plaintiff has not put forward any evidence to suggest that this reason for the delay is pretextual. Nor does plaintiff claim that, in the absence of a finding that the delay was motivated by discriminatory intent, defendant's comments are themselves actionable.[19] Accordingly, defendants' motion for summary judgment on this claim will be granted.

Before turning to defendants' motion *in limine*, I wish to note that by necessity this court's holdings are based only on the pleadings and evidence that are properly before it. Plaintiffs' failure to succeed on many of their claims does not suggest that their claims were not raised sincerely or

that defendants may not have made the work lives of the women police officers uncomfortable.

## 6. Motion in Limine

The final question before the court is the resolution of defendants' motion *in limine* in which defendants request the court to limit plaintiffs to the relief requested in their amended complaint. Plaintiffs' amended complaint requests a permanent injunction, back pay and benefits, costs and fees, and "other and further relief as may be just." The amended complaint does not specifically request punitive damages or compensation for pain, suffering, humiliation or inconvenience or punitive damages.

In support of their motion defendants rely on *Smith v. DeBartoli*, 769 F.2d 451, 453 n. 2 (7th Cir.1985), *cert. denied*, 475 U.S. 1067, 106 S.Ct. 1380, 89 L.Ed.2d 606 (1988) and *Moore v. Boating Industries*, 754 F.2d 698, 716 (7th Cir.1985). In *Smith* the court of appeals for this circuit notes that injuries such as emotional distress "that do not *necessarily* flow from" the constitutional claim raised, "can be recovered only as special damages ... which must be alleged in the complaint to be recovered." *Smith*, 769 F.2d at 453 n. 2 (emphasis in the original) (citing *Moore*, 754 F.2d at 716 and Fed.R.Civ.P. 9(g)). Plaintiffs respond that they are entitled to seek general damages, that defendants have had actual notice of their claims for general damages for over a year, and that their request for relief is sufficient under Fed.R.Civ.P. 8(a)(3).

■ Rather than accepting plaintiffs' nine page invitation to consider the sufficiency of their request for relief, I note merely that Fed.R.Civ.P. 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Defendants have not suggested that they would be prejudiced by an amendment of the complaint to request additional relief, and it does not appear that any prejudice would arise. Unlike the cases upon which

---

**19.** Plaintiff also does not suggest that the requirement that officers disclose the identity of

the ride-along had a disparate impact on female officers.

defendants rely, plaintiffs are not asking for additional relief *after* trial or summary judgment in their favor. However, plaintiffs will have to move to amend their complaint to include additional remedies. However, plaintiffs are free to move for amendment at any time.

 Plaintiffs have requested that Rule 11 sanctions be imposed upon defendants for their frivolous motion *in limine.* Defendants' motion is not so unreasonable that I can find that it was not submitted in good faith. Furthermore, in light of plaintiffs' failure to move to amend their complaint and their excessive briefing on the issue, I cannot find that they would be entitled to recover costs incurred in opposing the motion.

## ORDER

IT IS ORDERED that defendants' motion to strike is DENIED as unnecessary; that defendants' motion to dismiss for failure to plead necessary conditions precedent is DENIED; that defendants' motion to dismiss plaintiffs' Title VII claims against defendants Boehlert, Hammond, Wilkinson, and O'Connor for failure to name them in the complaint is GRANTED; that defendants' motion to dismiss plaintiffs' Title VII claims as beyond the scope of the administrative complaint will be considered as a motion for summary judgment and is GRANTED as to plaintiffs' claim concerning "light duty" restrictions and is DENIED as to all other claims; and that the defendants' motion to dismiss plaintiffs' § 1983 claims against defendant City of Sun Prairie is GRANTED as to the "ride-along" and "backup" claims and is DENIED as to all other claims. FURTHER, IT IS ORDERED that defendants' motion for summary judgment on plaintiffs' § 1983 claims against defendants Boehlert, Hammond Wilkinson and O'Connor, plaintiffs' remaining § 1983 claims against the City of Sun Prairie/Police Department, and their Title VII claims against City of Sun Prairie/Police Department (the Title VII claims against all other defendants having been dismissed) is DENIED as to plaintiff Rortvedt's shift change claim and is GRANTED as to all other claims.

In summary, the only remaining claims are plaintiff Rortvedt's Title VII shift change claim against the City of Sun Prairie and the same claim under § 1983 against defendants City of Sun Prairie/Police Department, Boehlert and Wilkinson.

## ON "LIGHT DUTY" AND MATERNITY LEAVE ISSUES

In the July 21, 1989 order deciding defendants' motions to dismiss and for summary judgment, I inadvertently failed to consider the merits of defendants' motion for summary judgment on plaintiffs' § 1983 light duty and maternity leave claims and mistakenly implied that summary judgment had been granted against plaintiffs on those claims. Plaintiffs have brought this error promptly to my attention, and I will consider the issue now.[1]

The proposed findings of facts the parties have submitted in accordance with this court's summary judgment procedures are extremely vague. Accordingly, I have considered the affidavits referred to in the proposed findings of fact and taken most of the findings of fact directly from them. From the parties' proposed findings of fact and supporting affidavits, and for the purpose only of deciding defendants' motion for summary judgment on plaintiffs' § 1983 light duty claim, I find that there is no genuine dispute as to the following material facts.

## FINDINGS OF FACT

The Department authorizes officers to go on light duty status while they are recovering from illness or injury and during pregnancy. To be eligible for light duty status an officer must submit a note from a doctor indicating the necessity for light duty status and the particular restrictions on the officer's activities. It is then determined

1. Also before the court is plaintiffs' motion to amend their complaint in light of the July 21, 1989 order. Because defendants have not yet had an opportunity to respond to the motion, I will not consider it at this time.

whether work consistent with those restrictions is available.[2]

In 1983 and 1985 plaintiff Baltzer was pregnant and requested light duty status. Based on her written request and supporting material from her doctor, she qualified for light duty status. Plaintiff Baltzer took maternity leave shortly prior to and then following the birth of each child. In 1985 plaintiff Markham was pregnant and qualified for light duty status. After the birth of her child she took maternity leave.

While on light duty status, plaintiffs were taken off patrol duty, assigned to station duties, and prohibited from activities that might cause abdominal injury. They were given assignments by defendant Wilkinson and reported directly to defendants Wilkinson and Hammond.

When plaintiffs commenced their maternity leave, they were required to give up their firearms, badges, and department paraphernalia.

### DISPUTED FACTS

The parties dispute what restrictions were placed on plaintiffs Markham and Baltzer while they were on light duty status. Plaintiffs aver that they were repeatedly told to have no contact with citizens in person or by telephone, that they were required to make daily reports of their activities, and that they were told that they were required to justify having "two high priced secretaries" at the department. Plaintiffs also aver that they are personally aware of male officers who while on light duty status were not required to make daily reports and were not restricted from citizen contact. Defendants aver that plaintiffs were restricted only from non-hazardous personal contact and that plaintiffs were never told that they were re-

stricted from all citizen contact. Defendants aver also that any differences in the restrictions and reporting requirements placed on plaintiffs were due to plaintiffs' individual limitations.

Defendants aver that all officers were required to give up badges and department paraphernalia when they went on extended leave and that plaintiffs were required to give up these items when they went on maternity leave pursuant to this policy. Defendant Wilkinson avers that plaintiff Markham was required to give up her firearms because of the length of her proposed leave. Defendant Boehlert avers both that he has "never taken a firearm from any officer in any action including ... sick leave or other leaves of absence" and, that plaintiffs were entitled to keep their department property until the day prior to the commencement of their extended leaves.

Plaintiffs aver that male officers were made to give up firearms, badges and other items only when they were on unpaid leave while plaintiffs were required to give them up during the paid as well as the unpaid portions of their maternity leaves.

### OPINION

■■■ The crucial facts underlying plaintiffs' § 1983 claims are in dispute. The parties disagree whether defendants discriminatorily imposed restrictions on plaintiffs that were not reasonably related to their pregnancies and leaves and whether the restrictions were also imposed on men on light duty status or leaves. The existence of these disputes of material fact precludes summary judgment.[3] Accordingly, plaintiffs' § 1983 light duty and maternity leave claims against defendants City of Sun Prairie, Boehlert, Wilkinson, and Hammond may proceed to trial.[4]

---

**2.** Defendants propose as fact that the "City Administrator requires employees on light duty status to have their activities carefully monitored by the Department to ensure that assignments are consistent with current restrictions." Because the portion of the record defendants cite to support this proposed fact makes no reference to any requirements imposed by the city administrator or any monitoring program, I will not find defendants' proposal as fact.

**3.** Defendants do not argue that no violation of the equal protection clause would exist if plaintiffs' allegations are proven true.

**4.** In their motion for reconsideration, plaintiffs concede that defendant O'Connor played no role in the alleged discriminatory actions and that he is not a defendant to this claim. As a result, no claims remain against defendant O'Connor.

## ORDER

IT IS ORDERED that defendants' motion for summary judgment on plaintiffs' § 1983 light duty and maternity leave claims is DENIED.

I also note that this decision does not affect the holding of the July 21, 1989 order that plaintiffs' Title VII claims based on the same facts are barred because they are beyond the scope of plaintiffs' administrative charges.