Herbert G. SENDALL, Plaintiff,

v.

**BOEING HELICOPTERS, A DIVISION OF THE BOEING COMPANY,**
Defendant.

Civ. A. No. 92–4789.

United States District Court,
E.D. Pennsylvania.

July 16, 1993.

Stephen G. Console, Mark S. Scheffer, Philadelphia, PA, for plaintiff.

Martin J. Black, Dechert, Price & Rhoads, Philadelphia, PA, for defendant.

## MEMORANDUM

ROBRENO, District Judge.

Plaintiff voluntarily retired from the employment of defendant at age 62 after approximately twenty-nine years of service. Two years after his retirement, he brought this action alleging age discrimination. Defendant has counterclaimed, charging that plaintiff disclosed defendant's proprietary information, appropriated trade secrets, and generally breached his duty of loyalty to defendant.

Defendant has moved for summary judgment on plaintiff's claims and for partial summary judgment on count one of its counterclaim. For the reasons set forth below, summary judgment is **GRANTED** in favor of defendant on plaintiff's claims, and partial summary judgment is **DENIED** as to count one of defendant's counterclaim.

## I. BACKGROUND

Plaintiff Herbert G. Sendall ("Sendall") worked as a compensation manager for defendant Boeing Helicopters ("Boeing") from 1961 until his voluntary retirement on November 1, 1990 at age 62.[1] In the course of his duties, he had access to defendant's personnel information including the employment history and wages and salaries of defendant's employees generally and of those of his own department specifically.

Sometime during the 1980s, plaintiff became dissatisfied with his compensation. He believed that in certain years he should have been entitled to larger annual raises than the defendant had awarded him. In fact, for two of these years he had received no raise at all. Plaintiff suspected that his salary adjustments were below those of younger managers because defendant was according preferential treatment to younger employees. His belief that he was being unfairly treated was, in part, grounded upon his review of some of the personnel records to which he had access in the course of discharging his duties as a compensation manager of defendant.

Plaintiff aired those grievances with certain supervisors and upper-level managers of defendant. Apparently dissatisfied with the pace or the result of these discussions, on September 25, 1990, plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") alleging age discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.Stat. Ann. §§ 951–963 (1991). The PHRC referred the charge to the Equal Employment Opportunity Commission ("EEOC") for dual filing, and the EEOC filed the charge on November 21, 1990. The EEOC chose not to investigate the charge; the PHRC did investigate the charge but concluded that the evidence was insufficient to substantiate the allegation of discrimination. On August 17, 1992, plaintiff filed this action alleging in Count I age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1985) and, in Count II, age discrimination in violation of the PHRA. Defendant has moved for summary judgment on both counts of plaintiff's complaint.

Defendant's counterclaim against plaintiff stems from plaintiff's alleged misappropriation of defendant's confidential employment information. On or about March 10, 1981, plaintiff and defendant executed a written

---

1. Sendall's employment with Boeing was continuous, with the exception of a period of lay-off in the 1970s.

contract entitled Proprietary Information and Invention Agreement (the "Agreement"). Defendant alleges in Count I of the counterclaim that plaintiff breached the Agreement through personal retention and unauthorized use and disclosure of defendant's proprietary information. In Counts II and III, defendant claims that the same conduct constitutes misappropriation of its trade secrets and breach of his duty of loyalty, respectively. Defendant has moved for partial summary judgment with respect to liability on Count I of the counterclaim.

I will first address defendant's motion for summary judgment on plaintiff's claims of age discrimination, after which I will discuss defendant's motion for partial summary judgment on Count I of the counterclaim.

## II. DISCUSSION

### A. Standard for Summary Judgment.

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The Court must accept the nonmovant's allegations as true, and resolve conflicts in the nonmovant's favor. *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). The moving party bears the initial burden of pointing out the absence of genuine issues of material fact, but summary judgment should be granted against a party that fails to show "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If there is no genuine issue of fact that the claim of the nonmoving party is time-barred as a matter of law, the moving party is entitled to summary judgment. *See, e.g., Lorance v. AT & T Technologies*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989) (affirming summary judgment for time-barred Title VII claim).

### B. Plaintiff's Claims of Age Discrimination.

Defendant contends that no genuine issues of material fact exist and that summary judgment is appropriate on plaintiff's claims of age discrimination for two reasons. First, defendant argues that the claims are barred as a matter of law because under both the ADEA and the PHRA, plaintiff failed to file the requisite administrative claims with the PHRC and the EEOC, respectively, in a timely fashion. Second, defendant argues that plaintiff has failed to meet his burden of establishing a *prima facie* case of discrimination or, alternatively, has failed to produce evidence to support a reasonable inference that Boeing's reasons for deciding the amounts of his raises were pretextual. Because the Court agrees with defendant's first argument, I need not address its second contention.

### 1. Plaintiff's ADEA Claim.

Federal law provides that in a state that has a law prohibiting age discrimination in employment, such as Pennsylvania's PHRA, prior to commencing an action under the ADEA, a potential claimant must first file a charge with the EEOC "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(2);[2] *see also* 29 U.S.C. § 633(b); 43 Pa.Stat.Ann. §§ 951–963. As noted above, plaintiff filed a complaint with the PHRC on September 25, 1990, the

---

**2.** The statute actually requires that the claimant file the charge within the *earlier* of "300 days after the alleged unlawful practice occurred, or ... 30 days after receipt by the individual of notice of termination of proceedings under State law." 29 U.S.C. § 626(d)(2). Defendant does not contend, however, that the 30 day period expired prior to the 300 day period in this case. Moreover, in July 1991, Sendall received notification from the PHRC that the PHRC's staff

investigation had concluded, but that the PHRC's supervisors and director still needed to review the staff's findings and recommendation. Drawing all reasonable inferences in favor of Sendall compels the conclusion that the 30 day period must have expired sometime after the 300 day period, and therefore the 300 day period determined his deadline for filing the EEOC charge in this case.

PHRC referred the charge to the EEOC for dual filing, and the EEOC filed the charge on November 21, 1990.

In this action, plaintiff alleges that from 1985 through his retirement in 1990, defendant discriminated against him because his salary adjustments were smaller by percentage than younger employees, or in some cases, that he received no adjustment at all while younger employees did. It was defendant's practice at all relevant times to award salary adjustments, if at all, on a yearly basis.[3] Prior to his filing the complaint with the PHRA on September 25, 1990, the most recent of the alleged discriminatory salary adjustments was the 1989 annual adjustment,[4] of which plaintiff received notice on October 20, 1989, at the latest.[5] *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (holding that time period for filing analogous Title VII charge with the EEOC commenced when the alleged discriminatory decision was made and communicated to claimant, rather than when the effects of the decision were felt). Therefore, the latest that the 300 day period for filing a charge with the EEOC would have expired is August 16, 1990.

Given that plaintiff did not file the initial complaint with the PHRA until September 25, 1990, there is no issue of fact that the EEOC charge was filed more than 300 days after plaintiff learned of the alleged unlawful decision on October 20, 1989. *See* 29 U.S.C. § 626(d)(2). The issue is whether, despite the absence of a genuine issue of fact as to the timing of the filing, the defendant is nevertheless not entitled to judgment as a matter of law by application of the judicially crafted doctrines of "continuing violation" or "equitable tolling."

"To establish a continuing violation, plaintiff must show 'a series of related [discriminatory] acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system before or during the [limitation] period.'" *Thakkar v. Provident Nat'l Bank*, Civil Action No. 90–3907, 1991 WL 274827, *2, 1991 U.S. Dist. LEXIS 18753, at *5–6 (E.D.Pa. Dec. 17, 1991) (quot-

---

**3.** Although the regular adjustments occurred annually, it appears that defendant did not necessarily implement the annual adjustments for all employees during the same month of any particular year. Apparently Boeing also awarded special raises to certain individuals at times in addition to the regular annual process. Sendall has not asserted, though, that he should have received any special interim raises. Rather, he alleges that his annual adjustments should have been higher.

**4.** In the Complaint in the present action, Sendall pleaded discrimination in Boeing's provision of salary adjustments from 1985 through his retirement on November 1, 1990. In fact, in October 1990, shortly before his actual retirement, Boeing implemented its 1990 annual adjustments, and Sendall received a raise during his last few weeks on the payroll. This, of course, followed his filing the complaint with the PHRC in September, and the PHRC complaint explicitly alleged discrimination only until about August 20, 1990. It is conceivable that his charge, nonetheless, was "timely" with respect to the October 1990 adjustment. *See Tobin v. Trans Union Sys. Corp.*, 488 F.Supp. 622, 629 (E.D.Pa.1980). Moreover, the EEOC filing did not occur until November 21, 1990, *after* the 1990 adjustment and well within the 300 day limitations period computed from October 1990.

At least in this particular case, however, the Court need not reach the somewhat ironic result of holding Sendall's claims inadequate as a mat-

ter of law for alleged acts of past discrimination, but sufficient to withstand summary judgment for alleged acts of discrimination that had not yet occurred when the claims were initially filed. In his deposition, Sendall admitted that the charge he initially filed did not concern the October 1990 adjustment. More importantly, Sendall's Affidavit and his Memorandum of Law submitted in opposition to Boeing's motion for summary judgment do not address the October 1990 adjustment, much less argue that the motion should be denied because of genuine issues of material fact concerning that adjustment. Thus even drawing all reasonable inferences in Sendall's favor, the Court must conclude that Sendall is not alleging claims of discrimination based upon the October 1990 adjustment, and so that adjustment will not preclude summary judgment in Boeing's favor on Sendall's claims.

**5.** Although Boeing necessarily would have made the decision as to the amount of Sendall's adjustment for 1989 before he first received the raise, at this stage, I construe the evidence in the light most favorable to plaintiff. Doing so, the latest date upon which he would have been put on notice of an alleged discriminatory act, the 1989 adjustment, was October 20, 1989, when his paycheck first reflected the raise. Therefore it is from this date that the filing deadline is computed.

ing *Tyson v. Sun Ref. & Mktg. Co.*, 599 F.Supp. 136, 138 (E.D.Pa.1984)).

Plaintiff seeks to bring his claim under the rubric of a "continuing violation" by claiming that the discriminatory acts of which he complaints occurred not when he was notified of his annual adjustments, but instead *every time* he was paid subsequent to the notification of the adjustments. Put simply, plaintiff contends that each and every payment made pursuant to an alleged discriminatory raise constitutes a *new* violation for purposes of computing the time for filing a charge with the administrative agency. In support of his argument, plaintiff relies upon *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), and *Nealon v. Stone*, 958 F.2d 584 (4th Cir.1992). His reliance is misplaced, as both of those cases involved claims for unequal pay for similar work.

Plaintiff here challenges discrete annual decisions concerning the amount of his raises. Unlike claims of unequal pay, in which each pay period of unequal pay for similar work during that pay period constitutes a new, present act of discrimination, *Bazemore*, 478 U.S. at 395–96, 106 S.Ct. at 3007; *Nealon*, 958 F.2d at 592,[6] plaintiff's claims challenge past acts of discrimination. Stated slightly differently, a claim of unequal pay relates to conditions during each pay period in question, without regard to conditions or actions at the time the employee's pay level was set. By contrast, plaintiff's claims that the annual decisions concerning his compensation were impermissibly based on age relate to actions at the times the impermissibly based decisions were made, regardless of how long the effects of the decisions are felt. *See Perez v. Laredo Junior College*, 706 F.2d 731, 734 (5th Cir.1983) (holding that decision to deny a raise is a single alleged violation, "[e]ven though the damages resulting from

that act, loss of pay, may continue," but also holding that acts of unequal pay for similar work by similarly qualified employees may qualify as continuing violations), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984); *Winters v. Prudential–Bache Sec., Inc.*, 608 F.Supp. 751, 755 (N.D.Ill.1984) (distinguishing equal pay claim, which is a continuing violation, from salary discrimination claim, which is not a continuing violation); *Tobin v. Trans Union Sys. Corp.*, 488 F.Supp. 622, 628–29 (E.D.Pa.1980).[7] That the effects of an alleged past violation continue does not mean that new, present violations have occurred each time the plaintiff received a paycheck. *See Delaware State College*, 449 U.S. at 258, 101 S.Ct. at 504.

Secondly, plaintiff claims that defendant's conduct in handling his internal grievances warrants the equitable tolling of the running of the limitations period within which he was required to file the administrative charge. "For purposes of tolling, the proper inquiry is whether plaintiff was deliberately prevented from recognizing that he was the victim of discrimination and/or deliberately prevented from filing suit." *Hower v. Richardson–Vicks, Inc.*, Civil Action No. 90–301, 1990 WL 187025, *5, 1990 U.S. Dist. LEXIS 15982, at *18–19 (E.D.Pa. Nov. 26, 1990), *aff'd without op.*, 935 F.2d 1281 (3d Cir.1991). Generally, however, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period." *Delaware State College*, 449 U.S. at 261, 101 S.Ct. at 506; *see also Tobin*, 488 F.Supp. at 627.

Plaintiff argues that defendant "lulled" him into delaying filing his administrative claim by conducting an internal investigation of his charges. He contends that he delayed filing charges until the investigation was concluded. The Third Circuit, however, has limited

---

**6.** Plaintiff has not asserted an equal pay claim. Indeed, his actual salary was higher than many of the younger employees who received the higher percentage annual raises he now challenges.

**7.** Sendall likewise contends that Boeing's alleged discrimination against him was part of a continuing policy or pattern of discrimination against older employees in salary adjustments. As ex-

plained above, though, his claims arise from discrete annual decisions regarding salary adjustments. That the effects of an alleged violation continue is not to say that a pattern of continuing violations exists. *See Jewett v. International Tel. & Tel. Corp.*, 653 F.2d 89, 93 (3d Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).

application of equitable tolling in such circumstances to cases in which a defendant has engaged in active misrepresentation.[8] *Williams v. Army & Air Force Exchange Serv.*, 830 F.2d 27, 30–31 (3d Cir.1987); *see, e.g., Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 308 (3d Cir.1983) (applying equitable tolling because allegedly "defendants deceived [plaintiff] into postponing the filing of a claim"), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). Since plaintiff does not allege that defendant affirmatively deceived him into delaying the filing of charges, but rather rests his claim for equitable tolling on his belief that defendant was giving serious consideration to his grievances during the pendency of the internal investigation, equitable tolling is unavailing to him. *Delaware State College*, 449 U.S. at 261, 101 S.Ct. at 506.[9] Defendant is therefore entitled to judgment as a matter of law on Count I of the Complaint.

### 2. *Plaintiff's PHRA Claim.*

■ Similar to the ADEA claim, plaintiff's claim under the PHRA is also time-barred because he failed to file his complaint with the PHRC on a timely basis. The administrative complaint with the PHRC must have been filed within 180 days of the alleged act of discrimination. 43 Pa.Stat.Ann. § 959(g).[10] Computing from the latest possible date of notice of his 1989 salary adjustment, which was October 20, 1989, the 180 day limitations period would have expired on April 18, 1990. However, no charges were filed with the PHRC until September 25, 1990.

The Pennsylvania Supreme Court has recently addressed the issue of continuing violations with respect to claims of age discrimination under the PHRA, explicitly endorsing the reasoning of *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), which is noted above. *See Vincent v. Fuller Co.*, 532 Pa. 547, 616 A.2d 969 (1992). In *Vincent*, the Pennsylvania Supreme Court held "that the limitations period [for claims under the PHRA] is not extended merely because the *effects* of an alleged violation continue to be experienced by the employee." *Id.* at 972, 616 A.2d 969 (emphasis added). Thus, as under the ADEA, plaintiff's allegations of a continuing violation based on the effects of the annual adjustments on subsequent paychecks do not preclude the entry of summary judgment against him on his PHRA claim.[11]

■ Like plaintiff's ADEA claim, because there is no genuine issue of material fact that plaintiff's administrative claim was not timely filed, his PHRA claim is time-barred and defendant is entitled to judgment as a matter of law on Count II of the Complaint.[12]

---

8. Although not raised by the plaintiff in this case, equitable tolling may also be applied in cases in which a "plaintiff has in some extraordinary way been prevented from asserting his rights, or ... if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 818 F.Supp. 104, 107–08 (E.D.Pa.1993).

9. Drawing inferences in Sendall's favor, there is no genuine issue concerning the fact that Boeing did not prevent him from filing a timely complaint, even during the pendency of internal review of his grievances. On July 22, 1990, Sendall wrote to Boeing and warned that if he did not hear about the status of the investigation of his grievances within the next few days, he would pursue other options. *See* Sendall Aff., Ex. 4. The next misconduct that Sendall alleges Boeing committed in lulling him into delaying his charge did not occur until August. *Id.* ¶ 25. In other words, even after Sendall made his intention of pursuing other options clear and imminent in late July, Boeing took no action to stop him from doing so. Moreover, had Sendall proceeded in late July 1990 to file a charge with

the EEOC, his charge would have fallen within the 300 day limitations period computed from October 20, 1989, and would have at least raised a genuine issue of material fact with respect to the timeliness of his ADEA claim.

10. In 1986, the PHRA was amended to extend the limitations period from 90 days to 180 days.

11. Further, as with plaintiff's federal claim under the ADEA, equitable tolling under Pennsylvania law requires defendant to have affirmatively induced plaintiff to delay bringing the action. *Connors v. Beth Energy Mines, Inc.*, 920 F.2d 205, 211 (3d Cir.1990). Therefore for the reasons rendering equitable tolling inapplicable to the ADEA claim, equitable tolling cannot refresh plaintiff's stale claim under the PHRA.

12. During the course of the PHRC's review of Sendall's complaint, Boeing moved to dismiss on grounds that the complaint was untimely, but the PHRC denied the motion. The PHRC viewed Sendall's claims as challenging a discriminatory wage structure, rather than challenging discrete

C. *Defendant's Counterclaim for Breach of Contract.*

■ Boeing has further moved for summary judgment as to liability on Count I of its counterclaim. Count I alleges that plaintiff breached the Agreement with the defendant by retaining and using in an unauthorized manner and by disclosing defendant's proprietary information to which plaintiff had access in the course of his duties as an employee of defendant.

The parties do not dispute the existence of the Agreement between them. Nor do they dispute that under the Agreement, plaintiff was obliged to refrain from unauthorized use or disclosure of defendant's proprietary information. Further, plaintiff was obliged to return materials containing such information to defendant upon his leaving the company. The parties do not dispute that plaintiff used and disclosed certain of defendant's personnel information in connection with the preparation and/or prosecution of the instant claims against defendant. Finally, plaintiff has not returned such materials to defendant.

Genuine issues of material fact nonetheless preclude summary judgment for defendant on its breach of contract counterclaim. The Agreement itself defines "Proprietary Information" to mean "information not generally known outside the Boeing Group or information entrusted to any member of the Boeing Group by third parties." Agreement ¶ 1(e). The Agreement further explains, "This information may relate, for example, to [i]nventions, computer technology and programming, research, development, engineering, manufacturing, purchasing, accounting, marketing, or selling." *Id.* The "Boeing Group" is defined as "The Boeing Company and all subsidiaries." *Id.* ¶ 1(b).

Plaintiff has submitted an Affidavit stating that while in the employment of defendant and in the course of his duties he shared the defendant's wage and salary information with numerous other companies and organizations outside the Boeing Group, including many through the Philadelphia Survey Group, the ASP Hansen Survey of Personnel jobs, the Executive Compensation Service, and the Bureau of Labor Statistics. Sendall Aff. (Document No. 18) ¶¶ 32–36. This alone is sufficient to raise an issue as to whether the personnel information allegedly misappropriated by plaintiff is generally known and available outside the Boeing Company and its subsidiaries.

There is also a more fundamental issue as to whether the prohibitions against disclosure contained in the Agreement are intended to apply to personnel information. In that the Agreement is not unambiguous on this point, its interpretation is a question of fact for which parol evidence may be relevant, and which must be left to the jury. *See Keeter v. John Griffith, Inc.,* 40 Wash.2d 128, 241 P.2d 213, 214 (1952);[13] *see also McGary v. Westlake Investors,* 99 Wash.2d 280, 661 P.2d 971, 974–75 (1983) (en banc); *cf. Mellon Bank v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1010–11 & n. 10 (3d Cir.1980).

D. *Subject Matter Jurisdiction Over the Counterclaim.*

Having dismissed plaintiff's ADEA claim which formed the basis for subject matter jurisdiction in this case, 28 U.S.C. § 1331, the Court may decline to exercise supplemental jurisdiction over the counterclaim, 28 U.S.C. § 1367(c), unless the defendant-counterclaimant can show that there is diversity of citizenship between the parties and the amount in controversy exceeds $50,000. 28 U.S.C. § 1332. While plaintiff pleads in the complaint that he is a citizen of Pennsylvania, neither party has averred the citizenship of defendant or the amount in controversy. The Court does observe that in the Reply (Document No. 6) to the counterclaim, plain-

---

discriminatory decisions in calculating annual raises. Having the benefit in the present action of review of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed.R.Civ.P. 56(c), it clearly appears that Boeing's annual decisions regarding raises are the target of Sendall's claims of discrimination and not the overall wage structure, even viewed in the light most favorable to plaintiff as the nonmoving party.

**13.** Under its own terms, the laws of the State of Washington govern the Agreement. Agreement ¶ 8.

tiff "admitted" defendant's assertion that the Court had jurisdiction over the counterclaim pursuant to 28 U.S.C. § 1332. Because it is not clear, though, from the pleadings whether there is an independent basis upon which the court may assert subject matter jurisdiction over the counterclaim, *cf.* Fed.R.Civ.P. 12(h)(3), the Court will grant defendant leave to amend the counterclaim within ten days in order to plead the citizenship of the parties and the amount in controversy. Fed. R.Civ.P. 15(a). Plaintiff shall then plead in response to the amended pleading within ten days after service of the amended pleading. If it appears from the amended pleadings that diversity jurisdiction exists, the Court will issue an amended scheduling order setting forth, *inter alia,* a discovery deadline and a trial date. If, on the other hand, it does not appear from the amended pleadings that diversity jurisdiction exists, the Court will then determine, as a matter of discretion, whether to exercise supplemental jurisdiction over defendant's counterclaim. 28 U.S.C. § 1367(c); *see Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284–85 & n. 14 (3d Cir.1993).

An appropriate Order follows.

## ORDER

AND NOW, this 16th day of July, 1993, upon consideration of the Motion of Defendant Boeing Helicopters for Summary Judgment on Plaintiff Herbert G. Sendall's Claims of Age Discrimination (Document No. 11), Defendant's Memorandum of Law in Support Thereof (Document No. 11), Plaintiff's Memorandum of Law in Opposition Thereto (Document No. 14), Defendant's Reply Memorandum of Law in Support Thereof (Document No. 17), and the Affidavit of Plaintiff Herbert Sendall filed January 5, 1993 (Document No. 18), and upon consideration of the Motion of Defendant Boeing Helicopters for Partial Summary Judgment on Count I of Boeing's Counterclaims (Document No. 10), Defendant's Memorandum of Law in Support Thereof (Document No. 10), and Plaintiff's Memorandum of Law in Opposition Thereto (Document No. 15), and for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The Motion of Defendant Boeing Helicopters for Summary Judgment on Plaintiff Herbert G. Sendall's Claims of Age Discrimination (Document No. 11) is **GRANTED,** and **JUDGMENT** is entered in favor of defendant and against plaintiff on Counts I and II of plaintiff's Complaint;

2. The Motion of Defendant Boeing Helicopters for Partial Summary Judgment on Count I of Boeing's Counterclaims (Document No. 10) is **DENIED;** and

3. Defendant shall have leave for 10 days from the date of entry of this Order to amend its counterclaims to plead the citizenship of the parties and the amount in controversy. Plaintiff shall plead in response to the amended pleading within 10 days after service of the amended pleading.

AND IT IS SO ORDERED.